UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZOPPAS INDUSTRIES de MEXICO, S.A. de C.V., a Foreign corporation,<br><br>Plaintiff,<br><br>v.<br><br>BACKER EHP INC. d/b/a BACKER-SPRINGFIELD, INC., a Delaware corporation,<br><br>Defendant. | C.A. No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Zoppas Industries de Mexico, S.A. de C.V. ("ZIM" or "Plaintiff"), by and through its undersigned counsel, files this Complaint against Backer EHP, Inc. dba Backer-Springfield, Inc. ("Backer" or "Defendant"). In support thereof, ZIM states as follows:

## NATURE OF THE ACTION

1. ZIM is a subsidiary of Zoppas Industries SpA ("Zoppas"). Zoppas, through its subsidiaries, has over 50 years of experience designing, manufacturing, and selling heating elements and systems for household and industrial sectors worldwide. It offers heating components for small and major household appliances, which include cooking, room comfort heating, refrigeration, and white goods, as well as industrial systems. Zoppas was founded in 1963 and is based in San Vendemiano, Italy.

2. ZIM was founded in 1999. ZIM supplies heating elements and systems to companies that incorporate these components into end-user products sold to businesses and consumers. ZIM's customers include Mabe, General Electric, Electrolux, Whirlpool, Samsung and Unomatic.

3. ZIM and Whirlpool, Inc. ("Whirlpool") are parties to a supply agreement, effective March 1, 2015 (the "Supply Agreement"), through which Whirlpool agreed to purchase certain products, including surface heating elements that Whirlpool incorporated into household electric ranges.

4. ZIM and Whirlpool are also parties to a Mutual Non-Disclosure Agreement having an effective date of November 1, 2016 (the "NDA"). Paragraph 3 of the NDA defines "Confidential Information" as "all data, information or technology disclosed related to the Purpose, whether tangible or intangible, written or unwritten form, obtained visually, audibly, or other means, including, but not limited to the following: business information and plans, marketing plans, samples, specimens, formulas, prototypes, products, features, color schemes, layouts, designs, specifications, databases, software, code, user interfaces, blueprints, drawings, tooling, processes, molds, testing, performance or cost information or any other information or data from which CI[1] could be derived."

5. ZIM alleges that Whirlpool breached the NDA by wrongfully using and disclosing ZIM's Confidential Information concerning the design and testing of heating elements for household electric ranges within Whirlpool and wrongfully disclosing ZIM's Confidential Information to one or more of ZIM's competitors, including Backer. ZIM's Confidential Information comprises, inter alia, ZIM's design of modified heating elements for household electric ranges, including schematics, 3-D models, prototypes, and numerous documents related to testing procedures, testing results, product-concept presentations, reports, and proposals. All of ZIM's Confidential Information was created by ZIM and shared with Whirlpool in confidence under the NDA.

6. On information and belief, Backer misappropriated and wrongfully obtained and used ZIM's Confidential Information, including to assist Whirlpool in designing and manufacturing competing heating elements for use in Whirlpool's household electric ranges, for the purpose of providing Whirlpool with a supply of heating elements that comply with UL 858.

7. ZIM, therefore, brings this action against Backer for injunctive relief and to recover damages for Backer's willful and malicious misappropriation of ZIM's trade secrets.

---

[1] The NDA defines confidential information exchanged by the parties under the NDA as "CI."

## THE PARTIES

8. Plaintiff ZIM is, and at all relevant times was, a foreign corporation organized under the laws of Mexico, with a principal place of business at Circuito Mexico No. 120 Parque Industrial Tres. Naciones, San Luis Potosi, S.L.P., Mexico.

9. Defendant Backer is, and at all relevant times was, a corporation organized under the laws of Delaware, with a principal place of business at 4700 John Bragg Hwy, Murfreesboro, TN 37127.

## SUBJECT MATTER JURISDICTION AND VENUE

10. This action arises under the Trade Secret Laws of the United States 18 U.S.C. § 1836. The Court has jurisdiction over this matter pursuant to 18 U.S.C. § 1836(c) and 28 U.S.C. §§ 1331 and 2201.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Backer is incorporated in this district.

## PERSONAL JURISDICTION

12. Exercise of personal jurisdiction over Backer is reasonable and proper because Backer, at all relevant times, was incorporated in this district.

## FACTUAL BASIS FOR CLAIMS

13. UL (formerly Underwriters Laboratories) is a global safety consulting and certification company headquartered in Northbrook, Illinois. UL was founded in 1894 and is accredited by the American National Standards Institute ("ANSI"). UL promulgates design and safety standards for a variety of products, including household electric ranges ("UL 858").

14. On or about November 7, 2014, UL issued revisions to standard UL 858 that included, among other changes, the addition of Clause 25.1.17 that states: "Switches, including relays or other switching devices in electronic controls, that control surface elements shall be

configured so that a single failure in a switching mechanism cannot result in a heating element remaining energized when the control is turned off." Revised UL 858 became effective on July 24, 2016 and originally each household electric range sold was required to comply with Revised UL 858 on or before June 2018.

15. Whirlpool manufactures, assembles and sells a variety of appliances, including household electric ranges that must meet safety standards promulgated by UL, including UL 858.

16. ZIM sells heating elements to Whirlpool that are then incorporated into household electric ranges sold by Whirlpool and its affiliated companies.

17. Whirlpool and ZIM are parties to the Supply Agreement with an effective date of March 1, 2015.

18. In response to the Revised UL 858 standard, on or about November 10, 2015, Whirlpool contacted ZIM to discuss developing new designs for heating elements for Whirlpool under the Supply Agreement that would comply with Revised UL 858 (the "Project").

19. In accordance with the Supply Agreement, Whirlpool engaged ZIM to modify the existing heating elements in order to comply with UL 858 while retaining the same functionality and configuration so that no modifications to the overall design of Whirlpool's electric ranges would be required. Whirlpool representatives referred to the desired modified heating elements as a "plug and play" solution.

20. To facilitate and safeguard the exchange of confidential and proprietary information between the parties pursuant to the Project, the parties, after over a year of negotiations, executed the NDA with an effective date of November 1, 2016. A true and correct copy of the NDA is attached hereto as **Exhibit A**.

21. The NDA prohibited Whirlpool from disclosing any Confidential Information ZIM provided to Whirlpool in connection with the Project to anyone other than its staff "with a need to know" or from using Confidential Information for any purpose other than the stated purpose of the Project.

22. According to Paragraph 3 of the NDA, ZIM's Confidential Information is defined as "all data, information or technology disclosed related to the Purpose, whether tangible or intangible, written or unwritten form, obtained visually, audibly, or other means, including, but not limited to the following: business information and plans, marketing plans, samples, specimens, formulas, prototypes, products, features, color schemes, layouts, designs, specifications, databases, software, code, user interfaces, blueprints, drawings, tooling, processes, molds, testing, performance or cost information or any other information or data from which CI could be derived."

23. Paragraph 6 of the NDA states that, "any disclosure or use of any CI in violation of this Agreement will cause Disclosing Party irreparable harm, the amount of which may be difficult to ascertain, and agrees Disclosing Party has the right to apply for specific performance and/or an order restraining and enjoining any such further disclosure or breach and for such other relief as Disclosing Party shall deem appropriate." In addition, the parties "expressly waive[d] any defense that a damages remedy [for breach of the NDA] will be adequate…."

24. Following the execution of the NDA, ZIM provided multiple design options to Whirlpool. One design ZIM provided incorporated a thermostat into the medallion in the center of the heating element's heating coil. Another ZIM design provided to Whirlpool placed the thermostat on one of the heating coil legs, as illustrated below. Both designs were means for preventing the heating coil from remaining energized in the event of a single failure in the range's existing switching mechanism.



25. On or about October 2016, and in furtherance of the Project, ZIM began using its UL-compliant designs to modify the Whirlpool heating elements. For the next thirteen months, ZIM invested substantial time, money and other resources in designing these modifications to achieve a "plug and play" version of the Whirlpool heating elements with the required UL 858 compliant thermostat. ZIM's work included attending meetings with Whirlpool representatives to discuss the modifications, performing tests and studies, preparing engineering specifications and drawings and, ultimately, engineering and creating functioning prototypes of the modified and Revised UL 858-compliant Whirlpool heating elements. ZIM provided all of this Project-related information to Whirlpool in confidence. For example, ZIM representatives traveled to Whirlpool's headquarters on November 9, 2017 to deliver sample modified heating elements and discuss progress of the Project.

26. In connection with its work on the Project, ZIM provided a total of 101 documents and eight different prototypes to Whirlpool—all designated as "Confidential Information" under the NDA.

27. During the parties' subsequent discussions regarding the Project, Whirlpool representatives expressed interest in obtaining the modified heating elements on an exclusive basis from ZIM. The Supply Agreement, under which the Project took place, was not an exclusive supply arrangement. ZIM representatives declined to enter into an exclusive arrangement for the modified products. ZIM explained to Whirlpool that ZIM was in the process of obtaining a patent for the modified heating elements and intended to sell the products to other appliance manufacturers in addition to Whirlpool, as it was permitted to do under the Supply Agreement and as it had done with other products it had sold to Whirlpool under the Supply Agreement.

28. On or about November 9, 2017, Whirlpool representatives informed ZIM that Whirlpool had decided it would no longer purchase heating elements from ZIM in accordance with the terms of the Supply Agreement, including heating elements which ZIM had modified to comply with Revised UL 858 in response to Whirlpool's request. Whirlpool specifically informed ZIM that Whirlpool had instead elected to develop Revised UL 858 compliant heating elements

with one of ZIM's competitors, which ZIM is informed and believes, and on that basis alleges, is Backer.

29. At no point prior to November 9, 2017 did Whirlpool inform ZIM that it was considering purchasing the modified heating elements from any other manufacturers or that it had any discussions or meetings with other manufacturers about doing so.

30. On November 13, 2017, ZIM asked that Whirlpool return all product prototypes, return or destroy all copies of documents containing ZIM's Confidential Information, and confirm in writing that it had done so in compliance with Paragraph 4 of the NDA. Paragraph 4 of the NDA required Whirlpool to "destroy or return all originals and copies of CI" upon ZIM's request.

31. On November 14, 2017, Whirlpool responded to ZIM's November 13, 2017 request noting that it "has made best efforts to protect the Confidential Information of its suppliers" and that it "would certainly work with Zoppas to return any Confidential Information as stated in the NDA."

32. On December 12, 2017, Whirlpool advised ZIM that all documents containing ZIM's Confidential Information had been returned or otherwise destroyed pursuant to Paragraph 4 of the NDA. A true and correct copy of that correspondence is attached hereto as **Exhibit B**.

33. ZIM now knows that Whirlpool lied about the destruction and return of ZIM's Confidential Information. ZIM never received any return of Confidential Information. According to Whirlpool's written representation, then, Whirlpool must have destroyed ZIM's Confidential Information. Yet, Whirlpool not only failed to destroy ZIM's Confidential Information, but has continued to this day to improperly access, share, and use that Confidential Information in breach of the NDA.

34. On April 30, 2018, ZIM received notifications from Google Drive indicating that Tamara Niedzwiecki, an Engineering Manager at Whirlpool, and Amit Khanchi, an employee of Whirlpool, had recently accessed and shared ZIM's Confidential Information. The Google Drive notification identified that at least Ms. Niedzwiecki and Mr. Khanchi accessed documents that

comprised ZIM's Confidential Information that Whirlpool had previously represented as returned and/or destroyed pursuant to Paragraph 4 of the NDA.

35. ZIM hired forensic analysts shortly thereafter to examine and preserve the access logs to ZIM's Confidential Information. Upon a further inspection, ZIM discovered that Whirlpool had been granting access to ZIM's Confidential Information to the following employees after its written statement of destruction on December 12, 2017: Lisa Chien, Brenna M. Denton, Giulio Ghiglieri, Karina Guizoni, Leslie M. Isaacs, Amit Khanchi, James R. Oldham, Thomas Walker Faussett, and Nephti P. Hoskin. Whirlpool continued to access and share ZIM's Confidential Information from January 16, 2018 until as recently as April 30, 2018.

36. Whirlpool continues to share access to at least ZIM's file entitled "Zoppas Plan." That plan includes ZIM's Confidential Information as well as trade secrets, including design schematics for ZIM's UL 858 Solution, product maps, testing/sampling plans, test analyses, and test results. As of August 21, 2018, at least twenty-eight (28) Whirlpool employees still have access to the Zoppas Plan along with 9 individuals that ZIM has been unable to identify.

37. The work with Backer to design a Revised UL 858 compliant heating element, was slow. As the June 2018 date for complying with UL 858 approached, Whirlpool realized it would miss the deadline. It, therefore, sought and received an initial extension until September 2018 to comply with the revised UL 858 standard.

38. On information and belief, in June 2018, Backer submitted two designs for Revised UL 858 compliant heating elements to UL for certification. Both designs failed the Revised UL 858 testing requirements and were not certified.

39. Having already missed the initial deadline, and with the extended September 2018 deadline fast approaching, Backer needed to finalize a design that complied with UL 858 quickly. It introduced a third design only a month after its first two designs failed. The third design is a near copy of one of the confidential ZIM designs that was provided to Whirlpool all the way back on November 20, 2016, almost two years earlier.

40. On information and belief, Whirlpool transmitted ZIM's Confidential Information, in violation of the NDA, to Backer in order to facilitate the engineering and manufacture of Revised UL 858 compliant heating elements. Backer used the Confidential Information to develop modifications to their heating elements that copy ZIM's designs so as to comply with Revised UL 858.

41. To protect its designs and the substantial investment in time and money that ZIM devoted to the development of its Revised UL 858 compliant heating elements, ZIM requested and obtained copyright registrations in the Estados Unidos Mexicanos ("Mexico"). A copy of the Mexican copyright registration is attached hereto as **Exhibit C**. ZIM filed for these registrations long before Backer introduced its UL 858 compliant design. Indeed, ZIM provided design specifications to Whirlpool under the NDA in November 2016, and a prototype of these designs in January, 2017, eighteen months before Backer suddenly introduced its knockoff design in July 2018.

42. On information and belief, Whirlpool shared ZIM's confidential and now copyrighted design with Backer in order for Backer to meet the deadline for Revised UL 858 compliant heating elements. Without a UL 858 compliant design, Whirlpool would suffer significant financial penalties and lost market share. Backer would likewise have suffered significant financial harm.

## FIRST CAUSE OF ACTION

### Misappropriation of Trade Secrets under
### 18 U.S.C. § 1836 of the Federal Defend Trade Secrets Act of 2016

43. ZIM realleges and incorporates herein by reference each and every foregoing and following paragraph of this Complaint as if set forth in full.

44. From on or about November 2016 through November 2017, ZIM disclosed Confidential Information to Whirlpool under the NDA pursuant to the parties' work on the Project.

45. ZIM's Confidential Information constitutes trade secrets within the meaning of Section 1893(3) of United State Code Title 18. Such information is valuable to ZIM, would be valuable to a competitor, and was developed at great expense to ZIM. Such information is subject to reasonable security efforts, including the NDA, and is not known to ZIM's competitors through legitimate means. Moreover, ZIM's Confidential Information derives independent actual and/or potential economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. 18 U.S.C. § 1839(3).

46. On information and belief, Backer acquired ZIM's confidential trade secrets from Whirlpool and used ZIM's confidential trade secrets to design, engineer, and manufacture Revised UL 858 compliant heating elements.

47. On information and belief, Backer knew or had reason to know that Whirlpool had a duty to keep ZIM's trade secrets secret.

48. ZIM is entitled to an order enjoining Backer's ongoing unlawful use and custody of the Confidential Information.

49. ZIM is entitled to actual losses resulting from Backer's misappropriation of trade secrets, unjust enrichment caused by the misappropriation of the trade secrets, and a reasonable royalty for Backer's use and/or custody of ZIM's Confidential Information.

## SECOND CAUSE OF ACTION

### Misappropriation of Trade Secrets under the Tennessee Uniform Trade Secrets Act

50. ZIM realleges and incorporates herein by reference each and every foregoing and following paragraph of this Complaint as if set forth in full.

51. From on or about October 2016 through November 2017, ZIM disclosed the Confidential Information to Whirlpool under the NDA pursuant to the parties' work on the Project.

52. ZIM's Confidential Information constitutes trade secrets within the meaning of the Tennessee Uniform Trade Secrets Act. Tenn. Code Ann. § 47-25-1702, et seq. Such information

is valuable to ZIM, would be valuable to a competitor, and was developed at great expense to ZIM. Such information is subject to reasonable security efforts including the NDA and is not known to ZIM's competitors through legitimate means. Moreover, ZIM's Confidential Information derives actual and/or potential independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. *Id.*

53. On information and belief, Backer acquired ZIM's confidential trade secrets from Whirlpool and used ZIM's confidential trade secrets to design, engineer, and manufacture Revised UL 858 compliant heating elements.

54. On information and belief, Backer knew or had reason to know that Whirlpool had a duty to keep ZIM's trade secrets secret.

55. ZIM is entitled to an order enjoining Backer's ongoing unlawful use and custody of the Confidential Information.

56. ZIM is entitled to actual losses resulting from Backer's misappropriation of trade secrets, unjust enrichment caused by the misappropriation of the trade secrets, and a reasonable royalty for Backer's use and/or custody of ZIM's Confidential Information.

## THIRD CAUSE OF ACTION

### Unjust Enrichment

57. ZIM realleges and incorporates herein by reference each and every foregoing and following paragraph of this Complaint as if set forth in full.

58. From on or about October 2016 through November 2017, ZIM disclosed the Confidential Information to Whirlpool under the NDA pursuant to the parties' work on the Project.

59. On information and belief, Whirlpool and Backer thereafter used the Confidential Information in violation of the NDA to develop modifications to the heating elements to comply with Revised UL 858. As a result, Backer has been unjustly enriched.

60. Accordingly, ZIM is entitled to restitutionary disgorgement of the value of the Confidential Information and the proceeds therefrom obtained by Backer as a result of this unjust enrichment, and the imposition of a constructive trust over these modified heating elements manufactured by Backer or those acting in concert with it and the proceeds thereof obtained by Whirlpool through its misconduct.

## PRAYER

WHEREFORE, ZIM prays for the following relief:

### First Cause of Action

Misappropriation of Trade Secrets under the Defend Trade Secrets Act of 2016

1. For an award of general, special, consequential and incidental damages against Backer in an amount according to proof;

2. For post-judgment interest at the applicable legal rate;

3. For attorneys' fees, costs and expenses incurred by ZIM; and

4. For preliminary and permanent injunctive relief prohibiting Backer from further using or possessing ZIM's Confidential Information disclosed to Whirlpool pursuant to the NDA.

### Second Cause of Action

Misappropriation of Trade Secrets under the Tennessee Uniform Trade Secrets Act

5. For an award of general, special, consequential and incidental damages against Backer in an amount according to proof;

6. For post-judgment interest at the applicable legal rate;

7. For attorneys' fees, costs and expenses incurred by ZIM; and

8. For preliminary and permanent injunctive relief prohibiting Backer from further using or possessing ZIM's Confidential Information disclosed to Whirlpool pursuant to the NDA.

### Third Cause of Action

**Unjust Enrichment**

9. For restitutionary disgorgement of the value of the Confidential Information

provided to Whirlpool by ZIM and wrongfully obtained and/or used by Backer and the proceeds thereof obtained by Backer from ZIM through its misconduct.

## Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38, ZIM hereby demands a jury trial on all issues triable to a jury.

HEYMAN ENERIO
GATTUSO & HIRZEL LLP

*/s/ Patricia L. Enerio*
Patricia L. Enerio (# 3728)
penerio@hegh.law
Aaron M. Nelson (# 5941)
anelson@hegh.law
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300

Attorneys for Plaintiff
Zoppas Industries de Mexico, S.A. de C.V.

OF COUNSEL:

MINTZ LEVIN COHN FERRIS
　GLOVSKY AND POPEO, P.C.
Daniel J. Herling (djherling@mintz.com)
Stephen J. Akerley (sjakerley@mintz.com)
Philip C. Ducker (pcducker@mintz.com)
Adrian Kwan (akwan@mintz.com)
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
(415) 432-6000

Dated: October 29, 2018