IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZOPPAS INDUSTRIES de MEXICO, S.A. de C.V., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 18-1693-CFC ) |
| BACKER EHP INC. d/b/a BACKER-SPRINGFIELD, INC., | ) ) ) |
| Defendant. | ) ) |

**REPORT AND RECOMMENDATION**

Pending before the Court is a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant Backer EHP Inc. d/b/a/ Backer-Springfield, Inc. ("Backer" or "Defendant") seeking dismissal of Plaintiff Zoppas Industries de Mexico, S.A. de C.V.'s ("Zoppas" or "Plaintiff") Complaint alleging trade secret misappropriation and unjust enrichment (the "Motion"). (D.I. 7) For the reasons that follow, the Court recommends that the Motion be DENIED-IN-PART and GRANTED-IN-PART.

**I.  BACKGROUND**

Plaintiff filed its Complaint on October 29, 2018. (D.I. 1) Defendant filed the instant Motion on December 19, 2018, (D.I. 7), and the Motion was fully briefed as of February 7, 2019, (D.I. 13). On October 7, 2019, the Motion was referred to the Court by United States District Judge Colm F. Connolly. (D.I. 15) Thereafter, at Plaintiff's request, (D.I. 14), the Court held oral argument on the Motion on December 3, 2019, (D.I. 17).

The Court will detail the relevant factual background relating to the Motion below in Section III of this Report and Recommendation.

## II. STANDARD OF REVIEW

When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In assessing the plausibility of a claim, the court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). As such, a well-pleaded complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal quotation marks and citation omitted). Determining whether a claim is plausible is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

## III. DISCUSSION

In its Complaint, Plaintiff asserts the following claims: (1) a claim for Misappropriation of Trade Secrets under the Federal Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. §

2

1836, *et seq.* (the "First Cause of Action"); (2) a claim for Misappropriation of Trade Secrets under the Tennessee Uniform Trade Secrets Act ("TUTSA"), Tenn. Code Ann. § 47-25-1702, *et seq.* (the "Second Cause of Action"); and (3) a state law claim for Unjust Enrichment (the "Third Cause of Action"). (D.I. 1 at ¶¶ 43-60) With its Motion, Defendant argues that each of these three claims should be dismissed. (D.I. 8)

In response, Plaintiff did not contest Defendant's Motion with regard to the Unjust Enrichment claim in the Third Cause of Action, (D.I. 12), and thus, the Court recommends that this claim be dismissed.[1] Plaintiff did contest Defendant's Motion as it relates to the other two claims (the "Trade Secret claims"). Thus, the Court will address those two claims below.

With regard to the Trade Secret claims, the legal elements for the two causes of action are essentially the same. *See Great Am. Opportunities, Inc. v. Cherry Bros., LLC*, Case No. 3:17-cv-1022, 2018 WL 418567, at *3 (M.D. Tenn. Jan. 16, 2018) ("The requirements for establishing misappropriation of a trade secret are largely the same under the DTSA and the [TUTSA]."); *see also* (D.I. 8 at 3-4; D.I. 12 at 4). The DTSA and the TUTSA define a "trade secret" as, *inter alia*, "technical" and other information that "derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information" and whose owner "has taken reasonable measures to keep such information secret[.]" 18 U.S.C. § 1839(3); *see also* Tenn. Code Ann. § 47-25-1702(4) (defining "[t]rade secret" in a materially similar way). Both statutes also define "misappropriation" of a trade secret to be:

---

[1] During oral argument on the Motion, Plaintiff's counsel confirmed that Plaintiff had no objection to the dismissal of the Third Cause of Action.

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) disclosure or use of a trade secret of another without express or implied consent by a person who—

    (i) used improper means to acquire knowledge of the trade secret;

    (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—

        (I) derived from or through a person who had used improper means to acquire the trade secret;

        (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

        (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret

. . .

18 U.S.C. § 1839(5); *see also* Tenn. Code Ann. § 47-25-1702(2) (defining "[m]isappropriation" in a materially similar way).

Defendant challenges Plaintiff's Trade Secret claims by making three different arguments: (1) that the Complaint does not sufficiently identify *what information is actually alleged to constitute* the trade secrets that were misappropriated; (2) that the Complaint does not sufficiently articulate why—as to whichever information Plaintiff means to put at issue—this information *meets the relevant statutory requirements* such that it amounts to a "trade secret"; and (3) that the Complaint fails to sufficiently allege how *Defendant actually misappropriated* (i.e., actually used or disclosed) the trade secrets at issue. (D.I. 8 at 4-9) For the reasons set

4

forth below, the Court disagrees with Defendant and concludes that Plaintiff has met its burden here.

With regard to Defendant's first argument, the Complaint does enough to identify at least some information that is clearly asserted to be a trade secret of Plaintiff. For example, Plaintiff alleges that on or about November 2015, third party Whirlpool, Inc. ("Whirlpool") engaged Plaintiff to develop new designs for heating elements for Whirlpool. (D.I. 1 at ¶¶ 18-19) These designs were intended to be compliant with newly-revised design and safety standards that had recently been set by a global safety consulting and certification company (the "Revised UL 858" standard). (*Id.* at ¶¶ 13-14, 18) From there, Plaintiff asserts that:

> (1) Plaintiff provided Whirlpool with multiple design options, including a design that "placed the thermostat on one of the heating coil legs" (the "leg thermostat design"), along with test and study results, engineering specifications and drawings, and a functional prototype as to that design (along with similar information about various other designs).
>
> (2) Whirlpool thereafter informed Plaintiff in November 2017 that it no longer wished to purchase such heating elements from Plaintiff, and that it had instead elected to develop Revised UL 858-compliant heating elements with Defendant, who is Plaintiff's competitor.
>
> (3) Defendant ultimately submitted a design to the certification company for a UL 858-compliant heating element that was a "near copy" of one of the designs that Plaintiff had previously shared with Whirlpool—i.e., the leg thermostat design.; and
>
> (4) Defendant thus used Plaintiff's information about the leg thermostat design to "develop modifications to their heating elements that copy [Plaintiff's] design[] so as to comply with Revised UL 858."

5

(*Id.* at ¶¶ 24-40) In light of these allegations, it is clear that, at a minimum, Plaintiff is alleging that the leg thermostat design and the above-referenced technical information relating thereto amount to "trade secrets" that are said to be at issue here.

With regard to Defendant's second argument, the Complaint pleads facts—at least as to the information relating to the leg thermostat design referenced above—plausibly explaining why this information satisfies the statutory definition of a "trade secret."[2] For example, the Complaint sets out why this is information that "derives independent economic value . . . from not being generally known to" and from "not being readily ascertainable through proper means by" others who can obtain economic value from its disclosure or use. 18 U.S.C. § 1839(3)(B); *see also* Tenn. Code Ann. § 47-25-1702(4)(A). The Complaint explains that the information at issue was provided to Whirlpool pursuant to a "Mutual Non-Disclosure Agreement" ("NDA") and that the parties to that NDA agreed that any disclosure of such information would cause Plaintiff "irreparable harm, the amount of which may be difficult to ascertain[.]" (D.I. 1 at ¶¶ 4, 22-23; *see also id.*, ex. A at ¶ 6) Moreover, Plaintiff alleges that it "invested substantial time, money and other resources" to generate such confidential design modifications for Whirlpool and that without a UL 858-compliant design, Whirlpool would "suffer significant financial penalties and lost market share" and Defendant would have "suffered significant financial harm." (D.I. 1 at ¶¶ 25, 42) And Plaintiff also sufficiently explains why this information was the subject of "reasonable measures to keep [it] secret." 18 U.S.C. § 1839(3)(A); *see also* Tenn. Code Ann. § 47-25-1702(4)(B). In that regard, the Complaint explains not only that Plaintiff provided this

---

[2] Because the Court has determined that at least this information is plausibly alleged to be a trade secret, it need not address Plaintiff's arguments that the Complaint also plausibly alleges that other information (including "information regarding designs and prototypes that failed to comply with the UL 858 standard") also amounts to a trade secret. (D.I. 12 at 5-6)

information to Whirlpool in confidence pursuant to the NDA, but also how after the relationship between Plaintiff and Whirlpool broke down, Plaintiff pressed Whirlpool to either return or destroy such information pursuant to the NDA's terms. (D.I. 1 at ¶¶ 25-26, 30-32; *see also id.*, ex. A at ¶ 4; *id.*, ex. B) This is all sufficient to make out a plausible claim that the information described above amounts to legally-protectable trade secrets.

Lastly, with regard to Defendant's third argument, Plaintiff has sufficiently articulated how it is plausible that Defendant actually misappropriated these trade secrets. In this regard, the Complaint alleges that Whirlpool, after having just ended its relationship with Plaintiff (Defendant's competitor), began working with Defendant to develop a UL 858-compliant heating element—the same type of project for which Whirlpool had previously engaged Plaintiff. (D.I. 1 at ¶ 28) And after the termination of its relationship with Plaintiff, Whirlpool employees (according to the Complaint) wrongfully continued to access Plaintiff's confidential information, in violation of the NDA. (*Id.* at ¶¶ 33-36) Plaintiff also alleges that as the June 2018 deadline for complying with the UL 858 standard approached, Defendant submitted to the certification company two designs for a compliant heating element that "failed the Revised UL 858 testing requirements and were not certified." (*Id.* at ¶¶ 37-38) And Plaintiff then pleads that after Whirlpool obtained an extension to this deadline, Defendant submitted a third design to the certification company that was a "near copy" of Plaintiff's leg thermostat design. (*Id.* at ¶ 39) Taking all of these allegations together, and viewing them in the light most favorable to Plaintiff (as the Court must here), the Court can plausibly make the inference that Plaintiff is suggesting: i.e., that Defendant—worried that it would miss the relevant compliance deadline and having previously failed to design a compliant heating element—sought and/or obtained Plaintiff's trade secret information from Whirlpool regarding the leg thermostat design, and used that information

7

in Defendant's design and development process.[3] (*See id.* at ¶ 40); *see also Eastman Chem. Co. v. AlphaPet Inc.*, Civ. Action No. 09-971-LPS-CJB, 2011 WL 5402767, at *9 (D. Del. Nov. 4, 2011) (finding, in reviewing a claim of trade secret misappropriation made pursuant to the Delaware Uniform Trade Secrets Act ("DUTSA"), that the plaintiff had plausibly alleged that the defendants used or disclosed plaintiff's trade secrets, such that they had misappropriated those trade secrets, because the complaint "alleges a specific illicit pathway . . . through which confidential information flowed, and alleges the time period and a set of relevant events . . . that was the impetus for the alleged wrongful disclosure and use"); *report and recommendation adopted*, 2011 WL 6148637 (D. Del. Dec. 9, 2011); *cf. Accenture Glob. Servs. GmbH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 663 & n.11 (D. Del. 2008) (rejecting the plaintiffs' "bare allegations" of trade secret misappropriation under the DUTSA because the complaint[4] simply alleged that the defendant "somehow gained access to [plaintiffs'] trade secrets[,]" but did not explain how the defendant had obtained such information) (internal quotation marks and citation omitted).

---

[3] Thus, the Court rejects Defendant's argument that "it is not reasonable to infer that [Defendant] must have derived [the leg thermostat idea] from a Zoppas trade secret" because "Zoppas makes no allegation that the idea of locating the thermostat on a heating coil leg—as opposed to somewhere else on the device—was a trade secret known only to Zoppas." (D.I. 8 at 7) It *could* be the case that this design was sufficiently obvious that Defendant came up with it independently. But at the pleading stage, the Court need only determine that Plaintiff's (alternative) theory about what happened here is a *plausible* one, based on the facts that are set out in the Complaint. And it is.

The Court emphasizes that it draws no conclusion as to whether Plaintiff will ultimately be able to meet its burden to prove that Defendant actually engaged in trade secret misappropriation.

[4] The complaint being evaluated in *Accenture* was the original complaint filed on December 18, 2007. *Accenture Glob. Servs. GmbH v. Guidewire Software Inc.*, Civil Action No. 07-826-SLR, D.I. 1 (D. Del.).

For all of these reasons, the Court recommends that Defendant's Motion be denied with regard to the Trade Secret claims.

## IV. CONCLUSION

The Court recommends that Defendant's Motion be GRANTED-IN-PART and DENIED-IN-PART. More specifically, the Court recommends that the Motion be DENIED as to the Trade Secret claims and that it be GRANTED as to the Unjust Enrichment claim.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: December 5, 2019

*[signature]*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE