# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZOPPAS INDUSTRIES DE MEXICO, S.A. DE C.V., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. 18-1693-CFC |
| BACKER EHP INC., | ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Presently pending before the Court is a Motion for Leave to File an Amended Complaint filed by Plaintiff Zoppas Industries de Mexico, S.A. de C.V. (D.I. 36.) As announced at the hearing on December 3, 2020, I recommend GRANTING the motion. My Report and Recommendation was announced from the bench at the conclusion of the hearing as follows:

> This is my Report and Recommendation on Plaintiff's motion to amend. (D.I. 36.) I will not be issuing a separate written report, but I will issue a written Report and Recommendation that incorporates a transcript of my oral ruling today.
>
> I want to emphasize before I begin that, while I'm not issuing a separate opinion, we have followed a full process for making the decision that I'm about to state. As I mentioned earlier, I have reviewed the proposed first amended complaint [and] the parties' briefing on the motion to amend and accompanying exhibits, and we heard argument today. Among other things, I also reviewed the transcript of the oral argument on Defendant's earlier motion to dismiss the original complaint, Magistrate Judge Burke's recommendation to grant that motion in part and deny it in part (D.I. 18), and Judge Connolly's Memorandum Order adopting Judge Burke's recommendation (D.I. 24). Everything has been carefully considered.
>
> For the reasons I will discuss, I recommend that Plaintiff's motion to amend be GRANTED.

The relevant procedural history is as follows. Plaintiff Zoppas Industries de Mexico, S.A. de C.V. ("ZIM") filed this action on October 29, 2018, against Defendant Backer EHP Inc. ("Backer"). (D.I. 1.) Counts One and Two of the original complaint set forth claims for misappropriation of trade secrets under the Federal Defend Trade Secrets Act and misappropriation of trade secrets under the Tennessee Uniform Trade Secrets Act, respectively. Count Three set forth a state law claim for unjust enrichment.

On December 19, 2018, Defendant Backer filed a motion to dismiss the complaint in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (D.I. 7.) On December 5, 2019, Judge Burke issued a Report and Recommendation in which he recommended that the motion be granted-in-part and denied-in-part. (D.I. 18). Judge Burke recommended dismissing the unjust enrichment claim because Plaintiff did not contest dismissal.

Judge Burke recommended denying Defendant's motion with respect to the federal and state trade secret misappropriation claims. As to those claims, Judge Burke rejected Defendant's arguments that the complaint failed to plausibly allege (1) the identity of the information that constitutes the trade secrets, (2) that the information met the definition of a trade secret, and (3) that defendant misappropriated the trade secrets. (*Id.* at 5-8.)

On January 14, 2020, Judge Connolly adopted Judge Burke's Report and Recommendation. (D.I. 24.) The Court entered a scheduling order on March 2, 2020. (D.I. 28.)

On May 15, 2020, Plaintiff filed the present motion for leave to file an amended complaint. Plaintiff attached the proposed first amended complaint ("Proposed FAC") to its motion; a redline version is set forth as Exhibit B. (D.I. 36, Ex. B (Proposed FAC).) Notably, the Proposed FAC does not add any new claims. It still sets forth the two remaining counts: misappropriation of trade secrets under the Federal Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836, and misappropriation of trade secrets under the Tennessee Uniform Trade Secrets Act ("TUTSA"), Tenn. Code Ann. §§ 47-25-1702, *et seq*. But it does amend certain factual allegations in support of those claims. The Proposed FAC has removed some of the factual allegations that were set forth in the original complaint, and it alleges some new facts that Plaintiff says it has learned and/or obtained from Defendant since the litigation began.

As I will explain in a minute, the outcome of the pending motion turns on whether the Proposed FAC plausibly alleges trade secret misappropriation. For purposes of that analysis, I will take as true the following facts alleged in the Proposed FAC.

Plaintiff ZIM is a Mexican company that supplies heating elements and systems to companies that incorporate these components into end-user products sold to businesses and consumers. (Proposed FAC ¶¶ 2, 8.) Defendant Backer is a Delaware corporation and a direct competitor of ZIM. (*Id.* ¶¶ 9, 16.)

Both companies supply heating elements that are incorporated into household electric ranges. (*Id.* ¶¶ 2, 16.) Such heating elements are subject to certain safety standards such as those set forth by UL (formerly Underwriters Laboratories). (*Id.* ¶ 13.) Household electric ranges are subject to standard UL 858. (*Id.*)

In August 2017, UL issued revisions to UL 858 that were required to be implemented by June 15, 2018. (*Id.* ¶ 14.) The revisions included the addition of a test that considers the average temperature of a dry cast iron pan. (*Id.*)

In November 2015, one of ZIM's customers, third party Whirlpool, Inc. ("Whirlpool"), contacted ZIM to discuss developing new heating elements that would comply with Revised UL 858. (*Id.* ¶¶ 3, 17-19.) In order to facilitate and safeguard the exchange of confidential information between the parties, they entered into a mutual non-disclosure agreement ("NDA") with an effective date of November 1, 2016. Among other things, the NDA prohibited Whirlpool from disclosing any of ZIM's confidential information (as defined in the agreement) that ZIM shared with Whirlpool in connection with the design project. (*Id.* ¶¶ 20-23, Ex. A.)

Following execution of the NDA, ZIM provided Whirlpool with various design options that would comply with Revised UL 858. For the next thirteen months, ZIM invested substantial time and money to engineer, create, and test several different designs and prototypes for Whirlpool. ZIM shared information related to its design and testing with Whirlpool subject to the terms of the NDA. (*Id.* ¶¶ 25-26.)

On November 9, 2017, Whirlpool informed ZIM that it had decided not to purchase the new heating elements from ZIM. (*Id.* ¶¶ 28-29.) Whirlpool told ZIM that Whirlpool had instead elected to develop Revised UL 858 compliant heating elements with

3

Backer, ZIM's competitor. (*Id.*) Four days later, on November 13, 2017, ZIM requested that Whirlpool return or destroy all copies of documents that contained ZIM's confidential information, in accordance with the NDA. (*Id.* ¶ 30, Ex. A.) On December 12, 2017, Whirlpool told ZIM that all documents containing ZIM's confidential information had been returned or destroyed. (*Id.* ¶ 32, Ex. B.) However, ZIM later determined through a forensic analysis that Whirlpool employees continued to access ZIM's confidential information from an online file storage between January 2018 and April 2018. (*Id.* ¶¶ 33-34.)

As for Backer's heating elements for Whirlpool, the Proposed FAC alleges that Backer's design was required to obtain individual approval from UL before Whirlpool's electric range could receive UL approval. (*Id.* ¶ 38.) Whirlpool was supposed to be compliant with the revised UL 858 standard by June 2018; however, it sought and received a three-month extension until September 2018. The Proposed FAC alleges that Whirlpool needed the extension because its work with Backer was "slow" and that Backer was "struggling" to complete its design. (*Id.* ¶¶ 38-39.)

According to the Proposed FAC, the design that Backer ultimately came up with was a "near copy" of one of the designs that ZIM had proposed to Whirlpool two years earlier, on November 30, 2016, in which the thermostat was placed on the leg of the heating element. (*Id.* ¶¶ 24, 39-40.) The Proposed FAC alleges that Whirlpool shared ZIM's confidential information regarding ZIM's heating element work with Backer in order for Backer to obtain UL certification for its heating elements. It further alleges that Backer was motivated to copy ZIM's design because Whirlpool was Backer's only customer for its heating elements. (*Id.* ¶¶ 40, 44.)

Turning to the present motion, Backer argues that the Court should deny ZIM's motion for leave to amend because it would be futile.

Federal Rule of Civil Procedure 15(a) governs amendments to pleadings. Rule 15(a)(2) provides that a court should freely give leave to amend when justice so requires. The decision to grant or deny leave to amend lies within the discretion of the court.[1]

While the standard governing amendments is liberal, leave may be denied on a number of grounds, including where the

---

[1] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

4

amendment is futile.[2] "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."[3] Stated another way, "[a]n amendment is futile if the proposed pleading could not withstand a motion to dismiss."[4] "A claim is not 'futile' merely because it will be difficult to prove."[5]

As with a motion to dismiss, to determine whether amendment is futile the court must assume all well-pleaded facts to be true and decide whether the amended complaint contains sufficient factual matter to state a claim to relief that is plausible on its face.[6] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[7]

As Judge Burke recognized in his previous Report and Recommendation, trade secret claims under the DTSA and the TUTSA are substantially similar. I incorporate by reference his discussion of the legal standards that apply to those claims.[8]

---

[2] *Id.* ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.").

[3] *Id.*; *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

[4] *McNeil v. Metzger*, No. CV 16-1083-CFC, 2020 WL 1154914, at *9 (D. Del. Mar. 10, 2020) (citing *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 278 (3d Cir. 2018)).

[5] *Site Microsurgical Sys., Inc. v. Cooper Companies, Inc.*, 797 F. Supp. 333, 336 (D. Del. 1992) ("[T]he claim must be futile as a matter of law rather than merely unlikely as a matter of fact.").

[6] *El v. Marino*, 722 F. App'x 262, 265 (3d Cir. 2018); *VLSI Tech. LLC v. Intel Corp.*, No. CV 18-0966-CFC, 2020 WL 3488584, at *2 (D. Del. June 26, 2020).

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[8] *See Zoppas Indus. de Mexico, S.A. de C.V. v. Backer EHP Inc.*, No. CV 18-1693-CFC, 2019 WL 6615421, at *2 (D. Del. Dec. 5, 2019), *report and recommendation adopted*, No. CV 18-1693-CFC, 2020 WL 205485 (D. Del. Jan. 14, 2020).
> [T]he legal elements for the two causes of action are essentially the same. *See Great Am. Opportunities, Inc. v. Cherry Bros., LLC*, Case No. 3:17-cv-1022, 2018 WL 418567, at *3 (M.D. Tenn. Jan. 16, 2018) ("The requirements for establishing misappropriation of a trade secret are largely the same under the DTSA and the [TUTSA]."). The DTSA and the TUTSA define a "trade secret"

5

The proposed FAC identifies the information alleged to be trade secrets as at least the heating element prototypes and designs and related technical information that ZIM shared with Whirlpool pursuant to an NDA. (Proposed FAC ¶¶ 25-26.) Those allegations have not been materially altered between the original complaint and the Proposed FAC. And as Judge Burke concluded in his previous Report and Recommendation, which was adopted by Judge Connolly, it is plausible that such information satisfies the definition of "trade secret." (D.I. 18 at 5-6; D.I. 24.)

---

as, *inter alia.*, "technical" and other information that "derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information" and whose owner "has taken reasonable measures to keep such information secret[.]" 18 U.S.C. § 1839(3); *see also* Tenn. Code Ann. § 47-25-1702(4) (defining "[t]rade secret" in a materially similar way). Both statutes also define "misappropriation" of a trade secret to be:

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
(B) disclosure or use of a trade secret of another without express or implied consent by a person who—
  (i) used improper means to acquire knowledge of the trade secret;
  (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
    (I) derived from or through a person who had used improper means to acquire the trade secret;
    (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
    (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret . . .

18 U.S.C. § 1839(5); *see also* Tenn. Code Ann. § 47-25-1702(2) (defining "[m]isappropriation" in a materially similar way). *Id.*

In opposing ZIM's motion to amend, Backer argues that the Proposed FAC fails to plausibly allege that Backer misappropriated any of ZIM's trade secrets. I disagree.

The Proposed FAC alleges that ZIM shared secret heating element designs and technical information with Whirlpool pursuant to an NDA. It alleges that Whirlpool decided not to purchase the heating elements from ZIM and instead decided to work with Backer, ZIM's competitor. It alleges that Whirlpool told ZIM it had destroyed all documents containing ZIM's confidential information but that Whirlpool employees nevertheless accessed documents containing ZIM's confidential information during a time when Whirlpool had switched to work with Backer. It alleges that Whirlpool sought an extension to the deadline to implement the UL standard, which at least suggests that Whirlpool and Backer may have had some sort of a setback during the development process. And it alleges that the design that Backer ultimately came up with was a "near copy" of one of the designs that ZIM had shared with Whirlpool pursuant to the NDA, in which the thermostat was located on the leg of the heating element. Those are enough facts to make it plausible that Backer misappropriated ZIM's trade secrets.

Backer argued in its papers, and at the hearing today, that putting the thermostat design on the leg of the heating element is essentially an obvious design choice and does not suggest copying. But that is a factual issue not appropriate for resolution at the pleading stage. Moreover, the proposed FAC does not merely allege that Backer copied the idea of a thermostat on the leg. Rather, it alleges that Backer's ultimate design was a "near copy" of a ZIM design in which the thermostat was on the leg.

Backer also points out that the Proposed FAC deleted some of the original complaint's allegations regarding Backer's development process. For example, the original complaint alleged that two of Backer's earlier design proposals failed to obtain UL certification. It also suggested that Backer, in desperation, switched its design to one of ZIM's to avoid missing the certification deadline. Those allegations have been removed from the Proposed FAC. (See D.I. 36, Ex. B ¶ 39.) Backer argues that, without those allegations, the Proposed FAC fails to state a claim.

I disagree. The withdrawn allegations, had they been proven by ZIM, certainly would have provided evidentiary support to ZIM's claim that Backer copied one of ZIM's designs because they suggest that ZIM had a strong motive to do so. Maybe without such evidence ZIM will be unable to convince the jury. But we are at the

7

pleading stage. The question is not whether ZIM has alleged enough factual material to win—or even whether it is probable that ZIM will win—but whether ZIM has alleged enough to move forward with discovery. I conclude that it has.

Backer also takes issue with other allegations in the Proposed FAC that relate to its motive to misappropriate trade secrets. Backer points out that the allegations about it being "slow" and "struggling" with its development are conclusory and can be disregarded. And it argues that other allegations regarding its desire to do a deal with Whirlpool are insufficient to support an inference that it had a motive to steal trade secrets. But if Backer is suggesting that a plaintiff must allege that a defendant competitor had a motive beyond its desire to sell its own products in the market, I disagree. Moreover, while showing that Backer was desperate to come up with a UL-compliant design and do a deal with Whirlpool may help ZIM convince a jury at trial, ZIM does not have to prove its claim at the pleading stage.[9]

Finally, Backer's answering brief also attached certain documents that, according to Backer, demonstrate that it designed its heating element independently. Even if the documents show what Backer says they do—which ZIM disputes—it is not appropriate for the Court to weigh evidence at this stage of the proceedings. To assess futility, the Court looks to see whether the amended pleading states a claim. I conclude that it does and, thus, granting leave to amend would not be futile.

Accordingly, I recommend that Plaintiff's motion to amend be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B),(C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages.

---

[9] Backer also argues that I should disregard ZIM's allegation that "the Mexican Institute of Industrial Property redetermined that [a Backer affiliate] had infringed ZIM's copyright" on a heating element design. (Proposed FAC ¶ 42.) I conclude that the Proposed FAC states a claim even without that allegation.

8

The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated: December 22, 2020

                                                                              _____
                                                                              The Honorable Jennifer L. Hall
                                                                              United States Magistrate Judge

The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated: December 22, 2020                                    _____
                                                                                   The Honorable Jennifer L. Hall
                                                                                   United States Magistrate Judge