IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ZOPPAS INDUSTRIES de MEXICO,
S.A. de C.V.,

        Plaintiff,

v.

BACKER EHP INC. d/b/a
BACKERSPRINGFIELD, INC.,

        Defendant.

C.A. No. 18-1693-GBW

**FILED UNDER SEAL**

---

Patricia L. Enerio, Aaron M. Nelson, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Daniel J. Herling, Brad M. Scheller, Geri L. Haight, Adrian Kwan, Samuel D. Sazer, MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.

    *Attorneys for Plaintiff.*

Philip A. Rovner, Jonathan A. Choa, POTTER ANDERSON & CORROON LLP, Thomas E. Williams, Kevin C. May, Daniel M. Terhune, Eric Y. Choi, NEAL, GERBER & EISENBERG LLP.

    *Attorneys for Defendant.*

**MEMORANDUM OPINION**

October 3, 2022
Wilmington, Delaware

*[signature]*

GREGORY B. WILLIAMS
U.S. DISTRICT JUDGE

Pending before the Court is Defendant Backer EHP Inc. d/b/a/ Backer-Springfield, Inc.'s ("Backer" or "Defendant") motion seeking summary judgment on Plaintiff Zoppas Industries de Mexico, S.A. de C. V.'s ("ZIM" or "Plaintiff") operative complaint alleging trade secret misappropriation (the "Motion"). D.I. 124. For the following reasons, the Motion is granted.

## I. BACKGROUND

Competitors ZIM and Backer supply heating elements to companies that incorporate such elements into end-user products. Those heating elements are subject to safety standards set forth by UL (formerly Underwriters Laboratories). One such standard, UL 858, was revised by UL ("Revised UL 858") and required to be implemented by June 15, 2018. ZIM and Backer each discussed developing new heating elements for third party Whirlpool, Inc. ("Whirlpool") that would comply with Revised UL 858.

Whirlpool and ZIM entered into a mutual non-disclosure agreement ("NDA") with an effective date of November 1, 2016. Among other things, the NDA prohibited Whirlpool from disclosing any of ZIM's confidential information (as defined in the agreement) that ZIM shared with Whirlpool in connection with the design project. Following execution of the NDA, ZIM provided Whirlpool with various design options that would comply with Revised UL 858.

Backer began discussing its product with Whirlpool after the parties entered into their own NDA on June 6, 2017. By the time Backer began discussions with Whirlpool, Backer had already designed its product and filed a patent application covering its design. Backer's design was materially complete when it began discussions with Whirlpool and did not materially change before receiving UL approval.

1

ZIM and Backer designed different products for Whirlpool. Backer designed a dual-coil heating element with a thermostat on the "leg" (below the heating coils and away from the cooking vessel). ZIM designed a single-coil heating element with a spring-loaded thermostat in the central "medallion" (pressed against the cooking vessel). During its development process, ZIM had considered a leg thermostat design similar to Backer's, but rejected it as inferior to the medallion design.

On November 9, 2017, Whirlpool informed ZIM that it had decided not to purchase the new heating elements from ZIM. Whirlpool told ZIM that Whirlpool had instead elected to develop Revised UL 858-compliant heating elements with Backer.

On November 13, 2017, ZIM requested that Whirlpool return or destroy all copies of documents that contained ZIM's confidential information. On December 12, 2017, Whirlpool told ZIM that all documents containing ZIM's confidential information had been returned or destroyed. However, ZIM later determined that Whirlpool employees continued to access a file called the "Zoppas Plan." The "Zoppas Plan" file contained information relating to a medallion design created by ZIM; it contained no information relating to a leg thermostat design of the type developed by Backer.

On October 29, 2018, ZIM filed the present suit against Backer asserting claims for misappropriation of trade secrets under the Federal Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836, et seq. and the Tennessee Uniform Trade Secrets Act ("TUTSA"), Tenn. Code Ann.§ 47-25-1702, et seq.[1] ZIM's theory as plead is that Backer acquired certain of ZIM's trade secrets from Whirlpool and used those trade secrets to design, engineer, and manufacture Revised

---

[1] ZIM initially alleged a state law claim for unjust enrichment, D.I. 1, which was later dismissed, D.I. 18 & 24. ZIM also sought leave to file an amended complaint, which this Court granted. D.I. 53 & 54.

2

UL 858 compliant heating elements. *See, e.g.*, D.I. 55 at ¶¶ 44, 48, 55. Whirlpool is not involved in this action.

As this action progressed, ZIM moved to compel Backer to produce certain discovery related to Backer's relationship with a third-party company named "Mabe." D.I. 94. The Court denied ZIM's motion, finding the Mabe-related evidence not relevant to the allegations in ZIM's operative complaint (which plead a misappropriation theory based on Backer's purported acquisition of a ZIM trade secret from Whirlpool). D.I. 98. The Court advised that, "I[f]f Plaintiff wishes to seek leave to amend its operative complaint to include these new allegations, it should file a motion seeking leave to do so." *Id.* ZIM did not seek such leave and did not file a second amended complaint.

Backer now moves for summary judgment on ZIM's misappropriation of trade secrets claims. D.I. 124 & 125 at 2.

## II.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Id.* "The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case." *Peloton Interactive, Inc. v. iFIT Inc.*, C.A. No. 20-1535-RGA, 2022 WL 1523112, at *1 (D. Del. May 13, 2022) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

3

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence ... of a genuine dispute ...." Fed. R. Civ. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

### III. DISCUSSION

Backer argues that ZIM has failed to produce any evidence that Backer acquired any ZIM trade secret from Whirlpool. D.I. 125 at 2. This Court agrees.

To establish a misappropriation of trade secrets claim,[2] ZIM must prove: "(1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret; (2) that is related to a product or service used in, or

---

[2] The legal elements of a claim arising under the DTSA and TUTSA are essentially the same. *See Great Am. Opportunities, Inc. v. Cherry Bros., LLC*, C.A. No. 17-1022, 2018 WL 418567, at *3 (M.D. Tenn. Jan. 16, 2018) ("The requirements for establishing misappropriation of a trade secret are largely the same under the DTSA and the [TUTSA].").

4

intended for use in, interstate or foreign commerce, and (3) the misappropriation of that trade secret[.]" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (internal citations and quotations omitted). "[M]isappropriation" is: "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent" in certain circumstances. 18 U.S.C. § 1839(5); Tenn. Code Ann. § 47-25-1702(2).

### A.  ZIM's Has Waived Its Claim Related to Mabe

ZIM attempts to satisfy the misappropriation element by arguing that that Backer "obtain[ed] a non-public 'sample' of Plaintiff's element from Mabe, which owed Plaintiff a contractual duty of non-disclosure." D.I. 133 at 10. But this Court has already ruled Mabe outside the scope of ZIM's operative complaint, D.I. 98, which pleads a misappropriation theory based on Backer's purported acquisition of a ZIM trade secret from Whirlpool, D.I. 55. Indeed, when ZIM previously moved to compel Backer to produce certain discovery related to Mabe, D.I. 94, this Court denied ZIM's motion as follows:

> The discovery sought by Plaintiff relates to an assertion that Defendant obtained non-public information about Plaintiff's design from a third-party company named Mabe. The claims in Plaintiff's operative complaint do not have anything to do with that allegation; that complaint alleges that Defendant obtained non-public information about Plaintiff's design from a different third-party company (Whirlpool). So the discovery sought is not relevant to Plaintiff's current claims and is thus not warranted.

D.I. 98 (citations omitted). This Court further advised ZIM that if it "wishes to seek leave to amend its operative complaint to include these new allegations [related to Mabe] . . . it should file a motion seeking leave to do so." *Id.* ZIM did not seek leave to amend its complaint to include

5

allegations related to Mabe.³ As a result, consistent with this Court's earlier ruling, Mabe-related evidence is not relevant to the issues at bar.

Now, ZIM seeks to introduce Mabe-related evidence by arguing that it "has made no secret of its intention to rely on such evidence [related to Mabe.]" D.I. 133 at 11. But a plaintiff "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. 2008); *see also Taylor v. Sanders*, 536 F. App'x 200, 203 (3d Cir. 2013) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)."). If this Court were to condone ZIM's attempt to use Mabe-related evidence to defeat summary judgment on a claim based on Backer's relationship with Whirlpool, the Court would err by permitting ZIM to amend its operative complaint via its opposing brief. *cf. Kyle v. Apollomax, LLC*, 987 F. Supp. 2d 519, 524 (D. Del. 2013) (noting that defendants' motion for summary judgment "would have to be granted" had plaintiff not mentioned a certain third-party as support for breach of fiduciary duty theory because "a party may not utilize its Opposition Brief as a vehicle for amending its claims"). Sanctioning ZIM's conduct here would be especially problematic given that ZIM conceded that amending its complaint was the procedural vehicle by which to add Mabe-related allegations in this action, D.I. 94 at 2 n.3,⁴ and Zim was previously warned by the Court to do so, D.I. 98. Thus, ZIM's present excuse for not pleading its Mabe claim

---

³ Neither did ZIM seek reconsideration of this Court's decision finding Mabe outside the scope of this litigation.

⁴ In its letter to the Court seeking to compel Backer to produce evidence related to Mabe, ZIM acknowledged the propriety of filing an amended complaint to introduce Mabe-related allegations into this action: "Even if the Court were to conclude that the allegations in ZIM's Amended Complaint do not entitle ZIM to discovery relating to Mabe, good cause would exist to modify the existing scheduling order and grant ZIM leave to file a Second Amended Complaint to add new allegations concerning Mabe based on the facts learned in discovery." D.I. 94 at 2 n.3.

6

(because it "was unaware of the evidence at the time that it filed its complaint," D.I. 133 at 11) is not persuasive.[5]

Accordingly, the Court will not credit ZIM's Mabe-related evidence as "disputed" material facts precluding the entry of summary judgment. *See In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990) ("If a court believes evidence is irrelevant, it need only say so and discount it accordingly when it makes its summary judgment determination."); *Garnett v. Bank of Am.*, 243 F. Supp. 3d 499, 508 n.2 (D. Del. 2017) (declining to rely upon defendant's claim of religious discrimination as part of employment discrimination action when raised for the first time in responsive summary judgment brief); *Thomas v. Colvin*, C.A. No. 11-449-RGA, 2016 WL 4163546, at *2 (D. Del. Aug. 4, 2016) ("As for Plaintiff's claims that Defendant failed to keep records, to make an affirmative action plan, and to publish reports, these claims were never in the case at all. Plaintiff could not raise these claims for the first time at summary judgment, and cannot raise them now."). By failing to amend its complaint, ZIM has waived its claim related to Mabe. *Spence v. City of Philadelphia*, 147 F. App'x 289, 292 (3d Cir. 2005).

---

[5] Curiously, ZIM did not amend even where record evidence contradicts the allegations upon which this Court previously relied. For example, ZIM plead that Whirlpool sought an extension until September 2018 to comply with Revised UL 858 because Backer was struggling to complete its design. D.I. 55 ¶¶ 38-39. ZIM also plead that Backer's design was a "near copy" of the confidential ZIM design that it had provided to Whirlpool. *Id.* at ¶ 39. And ZIM plead that Whirlpool had access to a confidential file during a time when Whirlpool had switched to work with Backer. *Id.* at ¶¶ 35-36. This Court credited each of those allegations as lending plausibility to ZIM's misappropriation claim. *See* Report and Recommendation, D.I. 55 at 7-8 (Dec. 22, 2020), *adopted by*, Order, D.I. 54 (Jan. 8, 2021) (emphasis added). But the parties now agree that there is no evidence Whirlpool sought an extension, that ZIM and Backer's designs were different, and the Zoppas File did not contain information about the design Backer chose to pursue. D.I. 134 ¶¶ 8-12.

### B. ZIM Has Provided No Evidence that Backer Acquired a ZIM Trade Secret from Whirlpool

As a fallback position, ZIM argues that "even if the direct [Mabe-related] evidence of Defendant's improper acquisition and use of Plaintiff's prototype were irrelevant to Plaintiff's causes of action, the circumstantial evidence is more than sufficient to preclude judgment as a matter of law." D.I. 133 at 15.

The United States Court of Appeals for the Third Circuit has explained that "[c]ircumstantial evidence can be used to establish a misappropriation of trade secrets, but only after enough specific information has been given to the accused party so they can defend what it is they are accused of stealing. Inferences drawn from circumstantial evidence cannot be used to substantiate bald assertions." *Givaudan Fragrances Corp. v. Krivda*, 639 F. App'x 840, 846 (3d Cir. 2016).

Here, ZIM has not identified what specific "more than sufficient" circumstantial evidence would create a genuine issue for trial on whether Backer acquired a ZIM trade secret from Whirlpool—a burden that is ZIM's to bear. *Peloton*, 2022 WL 1523112, at *1. In its responsive statement of facts, ZIM argues that "in the face of such evidence [related to Mabe], Backer's bare assertion that it never acquired trade secrets from Whirlpool should not be credited." D.I. 134 ¶ 1. But ZIM does not support the inference it seeks to draw with contradictory facts. *See Callaway Golf Co. v. Dunlop Slazenger Grp. Americas, Inc.*, 318 F. Supp. 2d 205, 210 (D. Del. 2004) (explaining that "the party bearing the burden of persuasion in the litigation, must, in opposing a summary judgment motion, 'identify those facts of record which would contradict the facts identified by the movant.'") (quoting *Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)). Setting aside unrelated Mabe evidence, ZIM cites only to deposition testimony that Whirlpool told Backer that "Zoppas's heating element had a

8

faster speed of heat." *See* D.I. 134 ¶¶ 1-2.[6] Those communications, however, occurred in late 2018 after ZIM's product was already in the public domain—a fact that ZIM does not dispute. D.I. 136, Ex. Q at 65:24-67:11; D.I. 134 at ¶ 6. *See NexPay, Inc. v. Comdata Network, Inc.*, No. 3:14-CV-01749, 2018 WL 4185374, at *10 (M.D. Tenn. Aug. 30, 2018) (analyzing TUTSA and noting that "[i]t is a fundamental aspect of a trade secret that it actually must be secret"); *Gentil v. Wingfield GmbH*, No. 20-CV-05358-EMC, 2021 WL 4979427, at *5 (N.D. Cal. Mar. 2, 2021) (noting under the DTSA that "[w]hen a trade secret is disclosed to the public, it is no longer protectable").

Moreover, in view of the parties' agreement that Backer designed its product in 2017, Backer could not have designed that product based on an awareness of ZIM's faster speed-of-heat obtained in 2018. Indeed, the parties agree that Backer did not begin discussing its product with Whirlpool until after Backer received a signed NDA from Whirlpool on June 6, 2017. D.I. 134 ¶ 3. By that time, Backer had already designed its product and filed a patent application covering its design. *Id.* at ¶ 4. Backer's design was materially complete when it began discussions with Whirlpool and did not materially change before receiving UL approval on March 20, 2018. *Id.* at ¶¶ 5, 15. While ZIM argues that "Backer never stopped trying to improve its speed-of-heat time,"

---

[6] *See, e.g.*, D.I. 134 ¶ 1 (citing Sazer Decl. Ex. Q at 67:7-11).

Q. Okay. So when Sean Howley told you that Zoppas's heating element had a faster speed of heat, what else, if anything, did he tell you about the Zoppas heating element?

A. Nothing. Nothing else that I recall. I mean, we'd already started benchmarking the Zoppas designs at the end of August and September 2018, so there's probably nothing -- I didn't learn anything from Whirlpool that I didn't already know.

To the extent ZIM cites to Mabe-related evidence to counter Backer's statement of facts, ZIM has waived its ability to rely upon it. *See supra.*

9

*Id.* at ¶¶ 4-5, none of ZIM's cited testimony supports an inference that Backer did so by acquiring a ZIM trade secret from Whirlpool.[7]

In essence, ZIM has pointed to Backer's desire to improve its speed-of-heat time and has speculatively concluded that Backer must have acquired a ZIM trade secret to do so. Speculation cannot sustain a trade secret misappropriation claim at summary judgment. *See Peloton*, 2022 WL 1523112, at *5 (granting summary judgment on trade secret misappropriation claim when based on "speculation"); *LiiON, LLC v. Vertiv Grp. Corp.*, No. 18-CV-6133, 2021 WL 4963610, at *7 (N.D. Ill. Oct. 26, 2021), *appeal dismissed*, No. 21-3202, 2022 WL 1656604 (7th Cir. Apr. 27, 2022) (holding plaintiff's misappropriation theory "insufficiently concrete and speculative to overcome summary judgment" in part because "it is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated. The plaintiff must show concrete secrets.") (internal quotation marks and citation omitted).

Because ZIM lacks sufficient evidence to raise a triable issue of fact on its trade secret misappropriation claims under the DTSA and TUTSA, Backer is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## IV. CONCLUSION

For the above reasons, Backer's Motion is granted. The Court will issue an Order consistent with this Memorandum Opinion.

---

[7] In fact, the parties agree that ZIM and Backer came up with different designs (Backer designed an element with the thermostat on the "leg" while ZIM designed an element with the thermostat on the "medallion"), and that ZIM had previously *rejected* Backer's thermostat-leg design as inferior before pursuing its medallion product. *Id.* at ¶¶ 8-11. And the parties agree that ZIM's "Zoppas Plan" purportedly accessed by Whirlpool contains information solely related to ZIM's medallion design; it contains no information relating to a leg thermostat design of the type developed by Backer. *Id.* at ¶ 12.