IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ZOPPAS INDUSTRIES de MEXICO, | : | |
| S.A. de C.V., a Foreign corporation, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 1:18-cv-01693-GBW-CJB |
| | : | |
| BACKER EHP INC. d/b/a | : | **PUBLIC VERSION** |
| BACKER-SPRINGFIELD, INC., | : | |
| a Delaware corporation, | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR ATTORNEYS' FEES**

HEYMAN ENERIO
GATTUSO & HIRZEL LLP
Patricia L. Enerio (# 3728)
penerio@hegh.law
Aaron M. Nelson (# 5941)
anelson@hegh.law
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
*Attorneys for Plaintiff Zoppas
Industries de Mexico, S.A. de C.V.*

OF COUNSEL:

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
Daniel J. Herling
djherling@mintz.com
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
(415) 432-6000

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO P.C.
Brad M. Scheller
bmscheller@mintz.com
Chrysler Center
666 Third Avenue
New York, NY 10017

MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
Geri L. Haight
glhaight@mintz.com
One Financial Center
Boston, MA  02111
(617) 542-6000

Dated:  November 8, 2022

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

RELEVANT HISTORY ......................................................................................3

    A.    Plaintiff Learns That Whirlpool Is Continuing To Access Its Trade Secrets While Working With Defendant ...................................3

    B.    Following a Diligent Investigation, Plaintiff Proceeds to Litigate Its Claims Against Defendant in Good Faith..........................6

LEGAL ARGUMENT ......................................................................................10

    A.    Plaintiff's Claims for Misappropriation of Trade Secrets Did Not Lack a Colorable Basis.................................................................12

    B.    Plaintiff Did Not Initiate This Litigation for an Improper Purpose ....................................................................................................15

    C.    The Amount of Fees Requested by Defendant Is Not Reasonable................................................................................................17

CONCLUSION .................................................................................................17

i

# TABLE OF AUTHORITIES

## CASES

*Elmagin Capital, LLC v. Chen*,
  2022 U.S. Dist. LEXIS 108131 (E.D. Pa. June 17, 2022) .......................1, 10

*Glaxo Inc. v. Novopharm Ltd.*,
  931 F. Supp. 1280 (E.D.N.C. July 5, 1996) ...................................................13

*Insurent Agency Corp. v. Hanover Ins. Co.*,
  2020 U.S. Dist. LEXIS 2565 (S.D.N.Y. Jan. 8, 2020) ..................................15

*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*,
  991 F.3d 361 (2d Cir. 2021) .........................................................................11

*Leatt Corp. v. Innovative Safety Tech., LLC*,
  2010 U.S. Dist. LEXIS 37382 (S.D. Cal. Apr. 15, 2010) ............................14

*Liebowitz v. Bandshell Artist Mgmt.*,
  6 F.4th 267 (2d Cir. 2021) ............................................................................11

*Merck & Co. v. SmithKline Beecham Pharms. Co.*,
  1999 Del. Ch. LEXIS 242 (Del. Ch. Aug. 5, 1999) ......................................13

*Sweet St. Desserts, Inc. v. Better Bakery*, LLC,
  2017 U.S. Dist. LEXIS 202996 (E.D. Pa. Dec. 11, 2017) ..............................1

*TransPerfect Global, Inc. v. Lionbridge Techs., Inc.*,
  2022 U.S. Dist. LEXIS 98139 (S.D.N.Y. May 31, 2022) ............... 11, 14, 15

## STATUTES

18 U.S.C. § 1836(b)(3)(D) ......................................................................... 10, 11, 17

## RULES

Fed. R. Civ. Proc. 16(b)(4) ....................................................................................9

## INTRODUCTION

Defendant's Motion for Attorneys' Fees ("Motion," D.I. 149) fails to show that Plaintiff "knew or was reckless in not knowing that its claims [for trade secret misappropriation] lacked merit" at the time that it filed suit.  *Elmagin Capital, LLC v. Chen*, 2022 U.S. Dist. LEXIS 108131, *1-2 (E.D. Pa. June 17, 2022) (quoting *Sweet St. Desserts, Inc. v. Better Bakery*, LLC, 2017 U.S. Dist. LEXIS 202996, *3 (E.D. Pa. Dec. 11, 2017)).  Furthermore, the communications that Defendant's Motion relies on so heavily as evidence that Plaintiff initiated this litigation for an improper purpose all took place ***nearly a year before Plaintiff initiated litigation***. It was during this interim period that Plaintiff discovered that a third-party, Whirlpool, Inc. ("Whirlpool"), was continuing to access Plaintiff's confidential materials, at the same time that it was working directly with Defendant.  And it was this discovery – not the emotional response of a handful of Plaintiff's employees upon first learning that Whirlpool had decided to work with Defendant – that prompted the thorough and diligent investigation that ultimately culminated in Plaintiff's decision to bring suit against Defendant.  Tellingly, Defendant's Motion makes no attempt to reckon with this timeline.

Plaintiff also had good reason to believe that Defendant was incentivized to make use of the trade secrets that Whirlpool had access to.  During the same period, one of Plaintiff's employees was informed by peers in the industry that Defendant

1

was struggling to satisfy Whirlpool's and Underwriters Laboratories' ("UL")
requirements.  Although Defendant makes much of the fact that UL certified the
safety of Defendant's design in March 2018 (which Plaintiff did not know prior to
this litigation), it ignores the undisputed evidence establishing that long after March
2018, Defendant still was unable to meet Whirlpool's performance criteria – and that
Plaintiff's design's performance far surpassed Defendant's, as Defendant was well
aware.  In fact, not only did Defendant have the means, motive, and opportunity to
misappropriate Plaintiff's trade secrets, the undisputed evidence also shows that
Defendant *did* misappropriate Plaintiff's trade secrets, albeit from Mabe[1] rather than
Whirlpool.

Furthermore, Plaintiff's contention that Defendant should have abandoned its
claims after receiving evidence purportedly showing that Defendant had not directly
copied Plaintiff's design betrays a fundamental misunderstanding of trade secret
law.  Trade secret misappropriation does not require copying; it requires only "use"
of a trade secret, for any purpose.  In this case, the undisputed evidence shows that
Defendant *did* use the confidential materials that it improperly acquired from Mabe
to perform a competitive analysis of Plaintiff's design before such design became
public.  The Court's determination that Plaintiff waived the right to rely on this

---

[1]     Mabe is a subsidiary of GE, an OEM with which Plaintiff had entered into an
NDA similar to the one that it entered into with Whirlpool.

2

evidence does not render such evidence irrelevant in determining whether Plaintiff's continued pursuit of its claims was in bad faith.

Finally, even if Defendant were entitled to recover some portion of its attorneys' fees (which it is not), the amount of fees requested is unreasonable. Defendant does not explain how Plaintiff should have known that its claims lacked evidentiary support before Defendant disclosed all relevant evidence to Plaintiff. Thus, Defendant should not be entitled to reimbursement of fees incurred prior to the conclusion of fact discovery.

For the reasons set forth in full below, the Court should deny Defendant's Motion in full, or, in the alternative, deny recovery of fees incurred by Defendant prior to the close of fact discovery.

## **RELEVANT HISTORY**

### **A.     Plaintiff Learns That Whirlpool Is Continuing To Access Its Trade Secrets While Working With Defendant**

On August 30, 2017, Underwriters Laboratories ("UL"), a global safety consulting and certification company, issued revised design and safety standards for household electric ranges pursuant to UL 858 ("Revised UL 858").  Alvarado Decl. ¶ 3.  In response to Revised UL 858, Whirlpool engaged Plaintiff to design and supply heating elements that would comply with the new standards without altering the functionality or configuration of existing Whirlpool ranges.  Herling Decl. Ex.

3

A.  Plaintiff likewise contracted with several other OEMs to provide Revised UL 858 elements for their end-user products.  *See* Alvarado Decl. ¶ 4.

In furtherance of the project to develop new heating elements for Whirlpool ("Revised UL 858 Project" or "Project"), Plaintiff and Whirlpool executed a non-disclosure agreement on November 1, 2016 ("NDA").  Herling Decl. Ex. B.  The NDA expressly prohibited Whirlpool from disclosing confidential materials and information received from Plaintiff in connection with the Project to anyone outside of Whirlpool.  *Id.*

Over the ensuing twelve months, Plaintiff disclosed to Whirlpool more than 100 confidential documents and prototypes relating to or reflecting the design and performance of its heating element by uploading them to a shared Google Drive. *See* Alvarado Decl. ¶ 5.

On November 9, 2017 – shortly after Plaintiff refused Whirlpool's request to supply Whirlpool exclusively – Whirlpool notified Plaintiff that it would be purchasing Revised UL 858 heating elements from Defendant instead.  *See* Alvarado Decl. ¶ 6.  Upon receiving this news, some members of Plaintiff's team who had worked long and hard to win Whirlpool's business expressed frustration, and Plaintiff began to explore its legal options in consultation with its attorneys.  *See* Mot. at 7.  What Defendant's Motion elides, however, is that these conversations occurred ***nearly a year before Plaintiff initiated this litigation***.  *Compare* Herling

Decl. Ex. C (November 11, 2017 email from which Defendant's Motion quotes) *with* D.I. 1 (Complaint filed October 29, 2018).

What happened in the interim?   On April 30, 2018, Zoppas received an automatically-generated notification from Google Drive indicating that Tamara Niedzwiecki, an Engineering Manager at Whirlpool, and Amit Khanchi, an employee of Whirlpool, had recently accessed and shared confidential materials on the Google Drive.  *See* Alvarado Decl. ¶ 7.  This revelation directly contradicted Whirlpool's prior representation to Plaintiff in December 2017 that it had already returned or destroyed all such materials.  *See id.*

The following month, one of Plaintiff's employees, Jorge Alvarado, had dinner with engineers employed at Electrolux (another OEM in the surface heating element industry), who informed him that Defendant was struggling with its design and had filed for an extension of approval of its Revised UL 858-compliant heating element.   *See* Herling Decl. Ex. D (Plaintiff's Supplemental Interrogatory Responses) at No. 8.   Even then, however, Plaintiff did not file suit.   Instead, Plaintiff began a diligent investigation of Defendant's design in order to assess the likelihood that Defendant had received Plaintiff's trade secrets from Whirlpool.

Along the way, Plaintiff's efforts were often stymied – for example, though Plaintiff formally requested information concerning Defendant's certification status from UL, UL denied Plaintiff's request pursuant to its confidentiality policies.  *See*

5

Herling Decl. ¶ 3.  Plaintiff's ability to obtain information from Whirlpool was also significantly hampered due to the fact that (1) Plaintiff did not expect Whirlpool to admit to sharing Plaintiff's trade secrets with Defendant, and (2) Plaintiff (like any business) did not wish to unduly antagonize an important customer.  *See* Herling Decl. ¶ 5.

Six months after Plaintiff learned that Whirlpool was continuing to access its trade secrets, Plaintiff finally elected to initiate this litigation, based on the totality of the evidence available to it at the time.  Plaintiff's purpose in doing so was solely to safeguard its intellectual property rights – not to harass, delay, or otherwise injure Defendant.  *Id.* ¶ 6.

**B.**   **Following a Diligent Investigation, Plaintiff Proceeds to Litigate Its Claims Against Defendant in Good Faith**

Plaintiff filed its original Complaint in this action on October 29, 2018.  *See* D.I. 1.  In addition to the evidence relating to Whirlpool's access to Plaintiff's trade secrets, Plaintiff's core allegations were (1) that Defendant was struggling with its product design, and therefore had a motive to appropriate Plaintiff's trade secrets, and (2) that Defendant appeared to have copied key elements of Plaintiff's design. *See id.* ¶¶ 36-40.

Defendant responded by filing a motion to dismiss.  *See* D.I. 7-8.  Following full briefing and a hearing, the Court denied Defendant's motion on January 14,

2020.  *See* D.I. 18, 24.  Defendant served its original Answer on January 28, 2020.
*See* D.I. 25.

Only later, on February 28, 2020 – nearly a year and a half after Plaintiff filed
its original Complaint – did Defendant serve on Plaintiff the Rule 11 letter attaching
evidence that, it claims, "demonstrat[ed] critical falsehoods in the Complaint."  Mot.
at 4.  Defendant contends that such evidence should have made clear that Defendant
had not struggled to obtain UL certification and had not copied certain elements of
Plaintiff's design.  *Id.*

Plaintiff responded by moving to file an amended complaint on May 15, 2020.
*See* D.I. 36.   Plaintiff's amended complaint (hereinafter, "FAC") removed the
allegation that "[Defendant's] designs failed the UL 858 testing requirements and
were not certified," and it alleged instead (correctly) that Defendant's design still
"had substantial operational and performance issues even after receiving UL 858
certification."  Herling Ex. E (redlined proposed amended complaint) ¶¶ 38-39.
Plaintiff also clarified that it was not Defendant's entire design that amounted to a
"near copy" of Plaintiff's, but rather that Defendant had specifically copied
Plaintiff's initial idea of placing the thermostat on the product's leg.  *Id.* ¶ 39.

Instead of serving a further Rule 11 letter attempting to demonstrate that
Plaintiff's new allegations were incorrect, Defendant opted to oppose Plaintiff's
attempt to amend its Complaint.  *See* D.I. 38.  On January 8, 2021, Judge Connolly

granted Plaintiff's motion for leave to amend.  D.I. 54.  Notably, while the parties had been waiting for the Court to rule, both sides had already chosen to incur the additional costs of initiating discovery.  *See* D.I. 44-45.

Defendant made its first production of documents on April 30, 2021.  *See* Herling Decl. ¶ 4.  Plaintiff had two months to review the 8,730 pages of documents before conducting individual depositions of Defendant's employees over the last two weeks of June 2021.  *See* D.I. 72-76.  During these depositions, Defendant's employees denied asking for or receiving Plaintiff's confidential materials from Whirlpool *or anyone else*.  *See* Mot. at 5.  Defendant's sweeping denials were belied, however, by the significant documentary evidence demonstrating that Defendant *did* unlawfully obtain from Mabe a prototype of Plaintiff's design before such design became available to the public.  *See* D.I. 37 at 7.  Defendant used this prototype to perform an extensive "████████████████" to assess the relative strengths and weaknesses of Plaintiff's design, in which Defendant's lead engineer ████████████ ████████████████████████████████.  *Id.*[2]

---

[2]    As admitted by George Snyder, a consultant who worked closely with Defendant on the development of its heating element, such information is of immense value to a company such as Defendant, even if it did not intend to directly copy its competitor's design.  *See* Herling Decl. Ex. G at 150:14-154:4, 157:7-158:1 (testifying that such information can still be "████████████████████████ ████████").

Based on the evidence already produced by Defendant, Plaintiff sought production of all documents relating to Defendant's acquisition of Plaintiff's prototype from Mabe. This time, however, Defendant was neither willing nor able to provide evidence that might have shown its conduct to have been innocent. *See, e.g.*, D.I. 94 (strenuously objecting to Plaintiff's requests). Instead, Defendant argued that its dealings with Mabe were beyond the scope of the FAC, *see id.* On September 13, 2021, Magistrate Judge Burke agreed. *See* D.I. 98.

Though not based on any clear error of law, Magistrate Judge Burke's order left Plaintiff in a bind: Although Plaintiff believed that it could satisfy Rule 15's liberal standard for amending its complaint to add allegations specifically relating to Mabe, the Scheduling Order (which the parties agreed to before either side had produced any documents) set a July 7, 2021 deadline for the parties to amend their pleadings. *See* D.I. 58 at 1. Plaintiff accordingly would have had to satisfy Rule 16's more-stringent "good cause" standard for modifying the Scheduling Order. *See* Fed. R. Civ. Proc. 16(b)(4).

Defendant, for its part, did not seek to move for summary judgment following Judge Burke's order.[3] On the contrary, Defendant proceeded to serve five additional

---

[3]     Defendant's timesheets suggest that it was considering bringing a motion for summary judgment at least as early as January 2021, only to choose not to do so. *See, e.g.*, May Decl. Ex. 5 at Feb. 16, 2021 Invoice pg. 5 (Jan. 14, 2021 K. May entry); *id.* at Dec. 15, 2021 Invoice pg. 3 (Nov. 11, 2021 T.E. Williams entry).

deposition notices on Plaintiff, including 19 Rule 30(b)(6) topics. *See* D.I. 100, 103-06. Defendant also baselessly attempted to depose Plaintiff's apex officer, while simultaneously (and equally as baselessly) seeking to deny Plaintiff the right to conduct a Rule 30(b)(6) deposition of its own. *See* D.I. 115; Herling Decl. Ex. F (December 6, 2021 Hr'g Tr.) (rejecting Defendant's position on both of these points).

Long after both parties had completed discovery, Defendant finally moved for summary judgment on April 26, 2022. D.I. 124. On October 3, 2022, the Court granted Defendant's motion on the grounds that Plaintiff (1) had waived its right to rely on evidence of misappropriation relating to Mabe, and (2) had not adduced any evidence that Defendant obtained trade secrets directly from Whirlpool. D.I. 124. The Court expressed no opinion as to whether the evidence relating to Mabe, if properly before the Court, would have been sufficient to raise an inference of trade secret misappropriation.

## LEGAL ARGUMENT

An award of attorneys' fees under 18 U.S.C. § 1836(b)(3)(D) requires a showing that Plaintiff's claims "completely lacked evidence," or that Plaintiff "knew or was reckless in not knowing that its claims lacked merit." *Elmagen*, 2022 U.S. Dist. LEXIS 108131 at *1-2 (quotation marks and citation omitted). Additionally,

although relevant case law from the Third Circuit is spare, a recent decision from a sister court denying attorneys' fees is particularly instructive here.

In *TransPerfect Global, Inc. v. Lionbridge Techs., Inc.*, 2022 U.S. Dist. LEXIS 98139 (S.D.N.Y. May 31, 2022), the court explained that the party seeking an award of fees under 18 U.S.C. § 1836(b)(3)(D) must establish "'first, that the challenged claim was without a colorable basis and, second, that the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay.'" 2022 U.S. Dist. LEXIS 98139 at *4 (S.D.N.Y. May 31, 2022) (quoting *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 368 (2d Cir. 2021)). For a claim to lack color, "'it must lack any legal or factual basis.'" *Id.* (quoting *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 283 (2d Cir. 2021)). A finding that the claim was motivated by improper purposes, in turn, "'may be inferred when an action is so completely without merit as to require the conclusion that it must have been undertaken for some improper purpose.'" *Id.* (quoting *Int'l Techs. Mktg., Inc.*, 991 F.3d at 368). Both prongs of the standard "must be supported by a high degree of specificity in the factual findings." *Id.* (quoting *Liebowitz*, 6 F.4th at 283).

Applying this standard, the *Transperfect* court denied a prevailing defendant attorneys' fees despite finding (1) that "any reasonably conducted [investigation] would have quickly revealed that [the plaintiff] could provide no adequate support for the claims brought," and (2) that the plaintiff continued pursuing its claims "even

11

after it became clear that it could not prove that it had suffered any damages from an alleged misappropriation of its trade secrets." *Id.* at *7. The court also noted significant additional evidence of bad-faith litigation tactics employed by the plaintiff's principal. *Id.* Nevertheless, the court still concluded that the defendant had failed to demonstrate bad faith "to the degree demanded by the law." *Id.*

As further discussed below, this Court should reach the same conclusion here, where the evidence of bad faith is far less compelling than in *Transperfect*.

## A. Plaintiff's Claims for Misappropriation of Trade Secrets Did Not Lack a Colorable Basis

As of October 29, 2018, Plaintiff had ample reason to suspect Defendant of misappropriating its trade secrets: It knew that Whirlpool was continuing to access Plaintiff's confidential materials while working with Defendant, despite representing to Plaintiff that it had returned or destroyed such materials.[4] It had learned from trusted sources that Defendant was struggling to create a design that simultaneously satisfied both UL *and* Whirlpool. And it knew that Defendant had

---

[4]     In its Motion, and throughout this litigation, Defendant has enjoyed taking Plaintiff to task for declining to seek discovery directly from Whirlpool. *See* Mot. at 8 n.3. As Defendant understands perfectly well, however, Plaintiff chose not to seek discovery from Whirlpool for the same reason that Defendant chose not to seek discovery from Whirlpool: Neither party wished to subpoena one of its largest customers. And neither party's choice is relevant to Plaintiff's Motion.

chosen to place the thermostat on its element's leg – just as Plaintiff had initially proposed to Whirlpool in November 2016.  *See* FAC ¶ 39.

The general contours of Plaintiff's allegations were not disproven in discovery – in fact, many were confirmed, as the evidence established that (1) Whirlpool accessed Plaintiff's trade secrets while working with Defendant, (2) Whirlpool was dissatisfied with the operational performance of Defendant's design even after Defendant had received certification from UL, and (3) Defendant was actively trying to obtain non-public information about Plaintiff's design, and eventually succeeded in doing so.  *See supra* at 8.  The only missing element was evidence that Defendant ever received Plaintiff's trade secrets directly from Whirlpool – and even then, *no evidence conclusively ruled the possibility out*, aside from the bare denials of Defendant's employees (which Plaintiff could not be expected to credit blindly).

Furthermore, Plaintiff's claims for trade secret misappropriation did not require a showing that Defendant copied Plaintiff's own design, either in whole or in part.  That is because even the improper acquisition of so-called "negative information" can constitute misappropriation.  *See, e.g.*, *Merck & Co. v. SmithKline Beecham Pharms. Co.*, 1999 Del. Ch. LEXIS 242, at *66 (Del. Ch. Aug. 5, 1999) ("Misappropriation also occurs where a defendant uses a plaintiff's trade secrets to understand what pitfalls to avoid."); *Glaxo Inc. v. Novopharm Ltd.*, 931 F. Supp. 1280, 1299 (E.D.N.C. July 5, 1996) ("A trade secret need not necessarily be

comprised of positive information, such as a specific formula, but can include negative, inconclusive, or sufficiently suggestive research data that would give a person skilled in the art a competitive advantage he might not otherwise enjoy but for the knowledge gleaned from the owner's research investment."); *Leatt Corp. v. Innovative Safety Tech., LLC*, 2010 U.S. Dist. LEXIS 37382, at *16-18 (S.D. Cal. Apr. 15, 2010) (explaining that trade secret protections extend to "negative" information).  And in this case, the evidence strongly suggested (and continues to strongly suggest) that Defendant utilized to its own advantage the non-public prototype that it unlawfully acquired from Mabe. *See supra* at 8.

Finally, to the extent that Defendant's Motion is predicated on a contention that Plaintiff should have systematically moved to amend its Complaint to strike specific factual allegations as they came into tension with evidence adduced in discovery, Defendant's position has no support in the law.  Indeed, Plaintiff is aware of no statute, rule, or court decision from any jurisdiction that requires a plaintiff to continuously modify its complaint as new facts are learned in discovery, as long as such facts still permit an inference (as they did in this case) that plaintiff has asserted an appropriate cause of action against defendant.[5]  *Cf. Transperfect*, 2022 U.S. Dist.

---

[5]      On top of many other problems, such a regime would encourage litigants to file *seriatim* motions to dismiss or to strike every time that a pleading was so amended.

LEXIS 98139 at *7 (declining to award attorneys' fees despite plaintiff's decision to continue pursuing its claims long after it should have realized no evidence supported its theory of damages). Notably, Defendant cites no authority to the contrary.

In view of this evidence, and of the applicable law, Plaintiff's claims did not lack a colorable basis. *See Transperfect*, 2022 U.S. Dist. LEXIS 98139 at *7; *Insurent Agency Corp. v. Hanover Ins. Co.*, 2020 U.S. Dist. LEXIS 2565, *24-28 (S.D.N.Y. Jan. 8, 2020) (denying attorneys' fees, despite defendant's contention that plaintiff's lawsuit was intended as "a fishing expedition," which ultimately "came up empty," because the circumstantial evidence available to plaintiff at the time it filed its complaint provided a reasonable basis for suspecting defendant of misappropriating its trade secrets).[6]

### B.   Plaintiff Did Not Initiate This Litigation for an Improper Purpose

Defendant's assertion that Plaintiff initiated this litigation for an "improper/dishonest purpose," Mot. at 10, is false. Defendant relies entirely on a single email chain created two days after Plaintiff first learned that Whirlpool had

---

[6]   Unlike the defendant in *Transperfect*, Defendant also offers no evidence or argument that Plaintiff engaged in any improper litigation tactics – aside from a single vague assertion that Plaintiff acted "unprofessionally" during the parties' mediation conference, Mot. at 5, which the Court should disregard as a flagrant breach of the mediation privilege.

chosen to contract with Defendant. *See supra* at 4-5. At best, the statements in this email chain reflect a single employee's heat-of-the-moment *suggestion* to file a lawsuit against Defendant at that time. The ultimate decision to do so, however, was not made in the heat of that moment – it was made nearly a year later, after Plaintiff discovered significant additional evidence that Defendant may have had access to its trade secrets. *See supra* at 4-5. It was this evidence – not conversations from nearly a year prior – that prompted Plaintiff to bring suit to protect its intellectual property rights. Defendant, for its part, cites no evidence to the contrary; it instead chooses to ignore the relevant timeline completely.[7]

Additionally, by the time Plaintiff brought this lawsuit, its goal could not possibly have been to "delay" Defendant from supplying Whirlpool with its heating elements. Mot. at 10. That is because Defendant had already long ago begun doing so. If Plaintiff's goal had truly been merely to "delay" Defendant's operations by filing a lawsuit, why did it wait so long before doing so? Defendant's Motion gives no answer.

---

[7]     It is telling that Defendant chooses to rely solely on deposition soundbites instead of submitting the underlying documentary evidence for the Court's review, which would have shown that the conversations it cites all occurred nearly a year before this litigation commenced.

16

### C.    <u>The Amount of Fees Requested by Defendant Is Not Reasonable</u>

Even if Defendant were entitled to recover a portion of its attorneys' fees under 18 U.S.C. § 1836(b)(3)(D) (which it is not), the Court should award substantially less than the ███████ demanded by Defendant. Mot. at 13. As even Defendant implicitly concedes, there is no basis for reimbursing Defendant's fees incurred prior to February 28, 2020, which is when it disclosed to Plaintiff the documents that it contends established the key elements of its defenses. *See id.* at 13 n.8. But even that date is far too early, as Plaintiff duly amended its Complaint in response. Once Plaintiff did so, Defendant did not serve a subsequent Rule 11 letter until long after Plaintiff had completed its depositions of individual witnesses in June 2021. Moreover, due to Defendant's baseless objections, Plaintiff did not have the opportunity to obtain binding Rule 30(b)(6) testimony from Defendant's authorized representatives until January 12, 2022. *See* D.I. 122-23.

Thus, Defendant should not be permitted to recover fees incurred before January 12, 2022.

### CONCLUSION

For the reasons stated, the Court should deny Defendant's Motion in full. In the alternative, the Court should limit Defendant's recovery to fees incurred after January 12, 2022.

HEYMAN ENERIO
GATTUSO & HIRZEL LLP

*/s/ Aaron M. Nelson*
Patricia L. Enerio (# 3728)
penerio@hegh.law
Aaron M. Nelson (# 5941)
penerio@hegh.law
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
*Attorneys for Plaintiff Zoppas Industries de Mexico, S.A. de C.V.*

OF COUNSEL:

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
Daniel J. Herling
djherling@mintz.com
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
(415) 432-6000

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO P.C.
Brad M. Scheller
bmscheller@mintz.com
Chrysler Center
666 Third Avenue
New York, NY 10017

MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
Geri L. Haight
glhaight@mintz.com
One Financial Center
Boston, MA  02111
(617) 542-6000

Dated:  November 8, 2022