IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZOPPAS INDUSTRIES de MEXICO, S.A. de C.V., a Foreign corporation,<br><br>Plaintiff,<br><br>v.<br><br>BACKER EHP INC. d/b/a BACKERSPRINGFIELD, INC., a Delaware corporation,<br><br>Defendant. | C.A. No. 18-01693-GBW-CJB |

**MEMORANDUM ORDER**[1]

After the Court granted summary judgment in favor of Defendant Backer EHP Inc. d/b/a/ Backer-Springfield, Inc.'s ("Backer" or "Defendant") on Plaintiff Zoppas Industries de Mexico, S.A. de C. V.'s ("ZIM" or "Plaintiff") operative complaint alleging trade secret misappropriation under the Defend Trade Secrets Act ("DTSA") and the Tennessee Uniform Trade Secrets Act ("TUTSA") (D.I. 144), Backer filed a Motion for Attorneys' Fees (the "Motion") (D.I. 149), which has been fully briefed (D.I. 150, 155, 161). For the following reasons, the Motion is GRANTED-IN-PART and DENIED-IN-PART.

**I.    LEGAL STANDARDS**

Under the DTSA and the TUTSA, the Court may award reasonable attorney's fees to the prevailing party "if a claim of the misappropriation is made in bad faith, which may be established by circumstantial evidence." 18 U.S.C. § 1836(b)(3)(D); Tenn. Code Ann. § 47-25-1705(1). "Bad faith" is not defined by the DTSA or TUTSA. *See generally id.* Courts have determined, however,

---

[1] The Court writes for the parties and assumes their familiarity with this action.

1

that bad faith may be established under both the DTSA and the TUTSA by a showing of: "(1) objective speciousness of the claim, and (2) subjective bad faith in bringing or maintaining the action, i.e., for an improper purpose." *Cherokee Chem. Co. v. Frazier*, C.A. No. 20-1757-MWF (ASX), 2022 WL 2036305, at *3 (C.D. Cal. Apr. 27, 2022) (DTSA); *Stilwell Dev. Inc. v. Chen*, C.A. No. 86-4487-GHK, 1989 WL 418783, at *4 (C.D. Cal. Apr. 25, 1989) (DTSA); *see also Wyndham Vacation Resorts, Inc. v. Timeshare Advoc. Int'l, LLC*, No. 3:10-CV-1028, 2013 WL 139204, at *4 (M.D. Tenn. Jan. 10, 2013) (TUTSA); *Hinson v. O'Rourke*, No. M201400361COAR3CV, 2015 WL 5033908, at *6 (Tenn. Ct. App. Aug. 25, 2015) (TUTSA). Under the TUTSA, bad faith requires "dishonesty of belief or purpose." *Hinson*, 2015 WL 5033908, at *6.

## II. DISCUSSION

### A. Objectively Specious

According to Backer, ZIM litigated in bad faith by filing the Complaint despite having knowledge that its allegations were "specious/implausible." D.I. 150 at 9. A claim is objectively specious where there is a complete lack of evidentiary proof from the party suing. *Hinson*, 2015 WL 5033908, at *6; *see also Elmagin Cap., LLC v. Chen*, No. 20-2576, 2022 WL 2192932, at *1 (E.D. Pa. June 17, 2022) (explaining DTSA claims were made in bad faith if they "complete[ly] lack[ed] ... evidence" and plaintiff "[knew] or [was] reckless in not knowing that its claim[s]" lacked merit) (quoting *Sweet St. Desserts, Inc. v. Better Bakery, LLC*, C.A. No. 12-6115, 2017 WL 6311664, at *3 (E.D. Pa. Dec. 11, 2017)).

As discussed below, the Court agrees with Backer that ZIM litigated this matter with knowledge that its claims were objectively specious. While Backer contends that ZIM knew that its claims were objectively baseless when it filed the Complaint, the Court finds that ZIM

2

understood that its claims were objectively specious by the close of fact discovery on January 12, 2022.

According to Backer, ZIM had no reason to suspect Backer of misappropriation when it filed the Complaint. D.I. 155 at 12. Rather Backer maintains that, prior to filing the Complaint, ZIM "knew that Whirlpool," ZIM's former and Backer's then-customer, "was continuing to access [ZIM's] confidential materials while working with [Backer,] despite representing to [ZIM] that it had returned or destroyed such materials." *Id.* Backer further argues that ZIM "learned from trusted sources that [Backer] was struggling to create a design that simultaneously satisfied both UL and Whirlpool," and ZIM "knew that [Backer] had chosen to place the thermostat on its element's leg – just as [ZIM] had initially proposed to Whirlpool in November 2016." *Id.* Thus, Backer maintains, ZIM could not have believed that its allegations had any plausibility. *Id.*

Despite this evidence, the Court holds instead that ZIM knew that its claims lacked merit by the close of fact discovery on January 12, 2022. As this Court noted in granting Backer's motion for summary judgment:

> ZIM plead that Whirlpool sought an extension until September 2018 to comply with Revised UL 858 because Backer was struggling to complete its design. D.I. 55 at 38-39. ZIM also plead that Backer's design was a 'near copy' of the confidential ZIM design that it had provided to Whirlpool. *Id.* at 39. And ZIM plead that Whirlpool had access to a confidential file during a time when Whirlpool had switched to work with Backer. *Id.* at 1135-36. This Court credited each of those allegations as lending plausibility to ZIM's misappropriation claim. *See* Report and Recommendation, D.I. 55 at 7-8 (Dec. 22, 2020), *adopted by*, Order, D.I. 54 (Jan. 8, 2021) . . . But the parties now agree that there is no evidence Whirlpool sought an extension, that ZIM and Backer's designs were different, and the Zoppas File did not contain information about the design Backer chose to pursue. D.I. 134 at ¶¶ 8-12." D.I. 144 at 7 n.5.[2]

---

[2] ZIM also attempted to survive summary judgment by pointing to evidence that the Court previously ruled inadmissible. D.I. 144 at 5-7. Even now, ZIM curiously attempts to rely on this evidence to support that it did not act in bad faith—even though these allegations do not appear in ZIM's operative pleading.

3

Although Backer argues that "[d]iscovery merely confirmed what would have been apparent to any reasonable person with the information in ZIM's possession at the time of filing," D.I. 161 at 7-8, Backer has not established this claim with sufficient evidence. Indeed, after Backer provided ZIM with pre-discovery documents in February 28, 2020, ZIM moved to amend its Complaint, which suggests that ZIM was at least willing to refine its allegations consistent with its Rule 11 obligations to the Court. D.I. 150 at 4-5. While Backer contends that ZIM's amended pleading still contained unsupported allegations, including that Backer was "slow" and "struggling," D.I. 150 at 7 n.3, the Court cannot conclude, without more, that ZIM's claims or allegations were per se specious as of the filing date.³ Thus, the Court finds that ZIM's claims were objectively specious as of January 12, 2022, when fact discovery was complete.

### B. Improper Purpose

Backer additionally contends that ZIM pursued this action with an improper purpose. As evidence, Backer highlights a November 11, 2017 email in which ZIM's CEO called Whirlpool, then one of ZIM's customer, a "[w]hore" for awarding a portion of its business to Backer and directed its employees to "start the legal process with the aim to delay" Whirlpool and Backer's new business relationship. D.I. 150 at 7 (citations omitted); D.I. 155 at 4-5 (citations omitted). ZIM does not dispute the contents of the statement. D.I. 155 at 16. Instead, ZIM notes that its action before this Court was filed "nearly a year later" and only after ZIM "discovered significant additional evidence that Defendant may have had access to its trade secrets." *Id.*

The Court is not persuaded by this argument. The "significant additional evidence" that ZIM alleges it "discovered" was later found to lack all support, as described *supra*. Further, while ZIM notes that it waited "nearly a year" to file suit, in the Court's view, this delay cannot sanitize

---

³ To the extent Backer challenges the competency of ZIM's legal team in pursuing various litigation strategies, D.I. 150 at 3-6; 7 n.3, the Court will not infer bad faith from incompetency.

4

the direct evidence that ZIM's CEO sought to wield the legal system to harm a competitor. The November 2017 email proves "dishonesty of . . . purpose." *Hinson*, 2015 WL 5033908, at *6. Finally, ZIM's attempt to diminish the egregiousness of its conduct by citing *TransPerfect Glob., Inc. v. Lionbridge Techs., Inc.*, C.A. No. 19-3283 (DLC), 2022 WL 2119344, at *2 (S.D.N.Y. May 31, 2022), is of no consequence since evidence of subjective bad faith was not at issue in *TransPerfect*.

Accordingly, the Court finds that ZIM pursued this action with an improper purpose.

### C. Reasonableness

ZIM concedes the reasonableness of Backer's attorneys' fees because, as Backer points out, ZIM does not challenge "the size or composition of Backer's legal team, the hourly rates charged by Backer's attorneys, or any of the time spent by those attorneys in defending this case." D.I. 161 at 7; *see* D.I. 155. ZIM has now waived any opposition thereto. ZIM also concedes that, if fees are awarded, they should be limited to those fees incurred after January 12, 2022. D.I. 155 at 17. Although Backer seeks fees incurred after February 28, 2020, the Court will award attorneys' fees incurred after January 12, 2022 consistent with the Court's analysis in Sections A and B, *supra*.[4]

### III.   CONCLUSION

For the foregoing reasons, the Motion is GRANTED-IN-PART and DENIED-IN-PART.

\* \* \*

---

[4] The parties do not dispute that Backer is the "prevailing" party.

WHEREFORE, this 13th day of November, 2023, IT IS HEREBY ORDERED that:

1. The Motion is GRANTED-IN-PART as follows:

    a. Defendant is awarded its reasonable attorneys' fees incurred in this matter after January 12, 2022.

    b. Not later than (7) days after the date of this Order, Defendant shall calculate and submit a Proposed Order identifying the amount of fees that Defendant incurred after January 12, 2022, consistent with its submissions to the Court (*see, e.g.*, D.I. 151 and accompanying exhibits) and consistent with this Order.

2. The Motion is otherwise DENIED.

_____<br>
GREGORY B. WILLIAMS<br>
UNITED STATES DISTRICT JUDGE